IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NIKKI L. CAMPBELL                                                    PLAINTIFF

V.                                    NO. 12-2007

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Nikki L. Campbell, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her application for DIB on April 9, 2010, alleging an inability

to work since March 26, 2010, due to having one kidney, a 60% hearing loss, migraine

headaches, and venous malformation.  (Tr. 96, 125).  An administrative hearing was held on

April 7, 2011, at which Plaintiff appeared with counsel and testified.  (Tr. 24-45).

By written decision dated May 5, 2011, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe - migraine

headaches and hearing loss.  (Tr. 16).  However, after reviewing all of the evidence presented,

the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any

-1-

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No.

4. (Tr. 16).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) in that the claimant is able to occasionally lift and carry 20 pounds and frequently 10 pounds. She is able to sit for six hours during an eight-hours[sic] workday and stand and walk for six hours during an eight-hour workday.  She is able to climb, balance, crawl, kneel, stoop and crouch.  She must avoid concentrated exposure to loud noise and cannot do work which requires excellent hearing, but she is able to avoid hazards in the workplace.

(Tr. 17).  With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could not perform her past relevant work, but would be able to perform such jobs as cashier, toll collector, ticket seller, and cashier II.  (Tr. 19-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered new evidence, and denied that request on November 4, 2011. (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed briefs and this case is before the undersigned for report and recommendation.  (Docs. 9, 10).

## II.    Evidence Presented:

Plaintiff was born in 1973, completed high school and lives in a house with her 18 year old daughter.  (Tr. 30, 121).  Plaintiff testified at the hearing that she had a loss of hearing since birth.  (Tr. 37).  She stated that as long as she is looking at someone while he or she is talking, and they are close enough, she can generally hear.  (Tr. 38).

Plaintiff presented herself to St. Edward Mercy Clinic - Primary Care Associates Assessment, on February 9, 2010, complaining that her feet were very cold at times, that she had migraine headaches, was constipated, and had an irregular period.  (Tr. 211).  The impression given was: 1) migraines; 2) constipation; 3)irregular periods; 4) lower pulses; and 5)

-2-

claudication.[1]  (Tr. 212).  The doctor scheduled an arterial doppler[2] B study, which was conducted

on February 23, 2010, and the study was normal.  (Tr. 216).

Plaintiff presented herself again to St. Edward Mercy Clinic on March 15, 2010, still

complaining of headaches, leg pain, and constipation.  (Tr. 209).  Plaintiff restarted taking

Amitriptyline for her migraines, and the doctor noted that the doppler study was normal.  (Tr.

209).

On June 17, 2010, Dr. Mohammed Quadeer, one of Plaintiff's treating physicians,

performed a consultative examination.  (Tr. 220-223).   Plaintiff denied redness, hotness,

claudication, or sciatica-type pain.  (Tr. 221).  Upon physical exam, Plaintiff was not in any acute

distress, her speech was 100% intelligible, there was a hearing deficit to normal conversational

voice, and her thought processes appeared normal.  Plaintiff's upper and lower extremity

movements were normal, and no point tenderness was noted during the evaluation.  (Tr. 222).

Peripheral pulses were adequate in all four extremities, and there was no edema of the hands,

knees, or pretibial areas noted.  Plaintiff's knees showed no effusion or edema and were stable

in all range of motion exercises.  (Tr. 222).  Her cervical spine was non-tender with full range of

motion, and straight leg raising reflex was negative bilaterally in both sitting and supine positions.

(Tr. 222).  Her gait was safe and stable with appropriate speed, she did not ambulate with the aid

of assistive devices and she had no identifiable muscle atrophy noted.  Her heel/toe walking was

normal and her tandem gait was within normal limits.  (Tr. 222).

---

[1]Claudication - Limping, usually referring to intermittent.  Stedman's Medical Dictionary 389 (28th ed. 2006).

[2]Doppler - A diagnostic instrument that emits an ultrasonic beam into the body; the ultrasound reflected from moving structures changes its frequency (Doppler effect).  Of diagnostic value in peripheral vascular and cardiac disease.  Id. at 580.

On July 26, 2010, a Physical RFC Assessment was completed by non-examining physician Dr. Kenneth Wainner. (Tr. 230-237). Dr. Wainner found that no exertional limitations were established, that no postural, manipulative or visual limitations were established, that Plaintiff had limited hearing and unlimited speaking, and should avoid concentrated exposure to noise. (Tr. 232-234). He concluded that Plaintiff's speech was 100% intelligible, she was neurologically intact, her strength was full throughout, and that her "VA" and gait were fully normal. (Tr. 237).

On October 19, 2010, Dr. Jonathan Norcross completed a Case Analysis wherein he stated that he reviewed all of the evidence and affirmed the assessment of July 26, 2012, as written. (Tr. 240).

On June 29, 2011, after the ALJ issued his decision on May 5, 2011, Plaintiff's treating physician, Dr. Vikki Sutterfield, completed a Physical RFC Evaluation. (Tr. 242-244). She found Plaintiff was very limited in her ability to sit, stand, and walk at one time; needed rest breaks at hourly intervals or less; could frequently lift 0-5 pounds, occasionally lift 6-10 pounds and 11-20 pounds; rarely lift 21-25 pounds, and could never lift over 25 pounds. (Tr. 242). Dr. Sutterfield found that Plaintiff could frequently carry 0-5 pounds; occasionally 6-10 pounds; rarely carry 11-20 pounds and 21-25 pounds; and never lift over 25 pounds. (Tr. 243). She found Plaintiff's lower extremities were limited; that her legs should be elevated when she was seated; that Plaintiff could occasionally use upper extremities (shoulder and arms) for push/pull, work in extended position, work above shoulder level, work overhead, and reach; could use her hands for grasping and fingering/fine manipulation frequently; could rarely bend, stoop, crouch, kneel, and balance; could never squat and crawl; could occasionally climb ramps; rarely climb stairs; never climb ladders and scaffolds; and should completely avoid unprotected heights and dangerous

-4-

moving machinery. (Tr. 243-244). Dr. Sutterfield found that Plaintiff had marked restrictions in driving/riding in automotive equipment (commercial type) and exposure to high noise levels; had moderate restrictions in exposure to extremes and sudden or frequent changes in temperature and/or humidity; had mild restrictions in handling vibrating tools; and had no restrictions in exposure to respiratory irritants or limitation on fine visual acuity. (Tr. 244). Dr. Sutterfield reported that Plaintiff had severe pain in her legs which was worsened by sitting or standing in one position for more than 15 minutes. (Tr. 244). She noted that Plaintiff had venous malformation resulting in headaches at least twice per month resulting in incapacity. She also noted that Plaintiff had hearing loss resulting in poor communication and concentration, and that Plaintiff had intermittent diarrhea, resulting in the need for time off. (Tr. 244).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

AO72A
(Rev. 8/82)

must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.  Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ erred when he did not find

-6-

that Plaintiff's leg pain constituted a severe impairment; 2) The ALJ discredited Plaintiff's subjective complaints inappropriately; 3) The ALJ's RFC finding is contrary to the evidence; and 4) The ALJ's step five conclusion is erroneous.  (Doc. 9).

### A.    Severe Impairment:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

When Plaintiff complained to St. Edward Mercy Clinic on February 9, 2010, that her feet were very cold at times, the doctor scheduled an arterial doppler test of Plaintiff's lower extremities.  (Tr. 212).  The doppler test was normal.  (Tr. 216).  She again complained of leg pain on March 15, 2010, but the doctor noted that the doppler study was ok.  (Tr. 209-210).  No other objective medical evidence supports Plaintiff's allegation that her leg pain was severe.

When Plaintiff saw Dr. Quadeer on June 17, 2010, Plaintiff denied redness, hotness, claudication, or sciatica-type pain.  (Tr. 221).  Upon physical exam, she was not in any acute distress, her upper and lower extremity movements were normal, and no point tenderness was noted during the evaluation.  (Tr. 222).  Peripheral pulses were adequate in all four extremities, and there was no edema of the hands, knees, or pretibial areas noted.  Plaintiff's knees showed no effusion or edema and were stable in all range of motion exercises.  (Tr. 222).  Her straight leg

raising reflex was negative bilaterally in both sitting and supine positions. (Tr. 222). Her gait was safe and stable with appropriate speed, she did not ambulate with the aid of assistive devices and she had no identifiable muscle atrophy noted. Her heel/toe walking was normal and her tandem gait was within normal limits. (Tr. 222).

In the Physical RFC Assessment dated July 26, 2010, Dr. Kenneth Wainner reported no exertional or postural limitations were established. He also noted that the arterial doppler showed "normal ABI's." (Tr. 231-239).

As indicated earlier, subsequent to the ALJ decision, Plaintiff obtained a Physical RFC Evaluation dated June 29, 2011, from treating physician, Dr. Vikki Sutterfield. (Tr. 242-244). She indicated that Plaintiff had severe pain in her legs which were worsened by sitting or standing in one position for more than 15 minutes and must change frequently. (Tr. 244). When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted

-8-

evidence had it been available at the initial hearing. <u>Flynn v. Chater</u>, 107 F.3d 617, 621 (8th Cir.1997).  Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The Appeals Council considered the additional evidence from Dr. Sutterfield, but did not believe it provided a basis for changing the ALJ's decision.  The question for the undersigned is whether the ALJ's decision is still supported by substantial evidence.  With respect to the severe impairments, the Court believes very little weight should be given to Dr. Sutterfield's opinion.  There is no indication in Dr. Sutterfield's opinion of the treatment relationship between her and Plaintiff.  As urged by Defendant, Dr. Sutterfield treated Plaintiff on two occasions prior to completing the physical RFC assessment.  (Tr. 209-216).  Further, Dr. Sutterfield's opinion is not supported by the medical evidence of record.  Plaintiff's Doppler test was normal, and Dr. Sutterfield did not provide a good explanation for her opinion.   Based upon the total record discussed above, the Court does not believe the ALJ would have given Dr. Sutterfield's opinion much weight, and believes there is substantial evidence to support the ALJ's severe impairment findings.

**B.    Subjective Complaints:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support

-9-

them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Plaintiff contends that her impairments were disabling. However, the evidence of record does not support this conclusion.

The ALJ found that the Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 17). The ALJ discussed Plaintiff's daily activities and the fact that she was able to take care of her personal needs, perform most household chores, cook quick and easy meals, and drive a car to run errands. (Tr. 17). With respect to Plaintiff's migraine headaches, Plaintiff testified that she took Amitriptyline for her migraine headaches and Tylenol for regular headaches. (Tr. 34). In one medical record, it indicates that her headaches became better after she restarted Amitriptyline. (Tr. 209).

In addition, Plaintiff sought very little treatment for her impairments, as noted by the ALJ when he found "significant lack of objective medical evidence to document a disabling impairment." (Tr. 18). He also noted that Plaintiff suffered from her hearing loss all her life, which did not prevent her from working in the past. (Tr. 18). Furthermore, although Plaintiff testified that she was unable to afford to go to the doctor, there is no indication that Plaintiff was denied treatment or that she sought care from a free health clinic. See Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992).

-10-

The Court believes there is substantial evidence to support the ALJ's credibility findings.

**C.  RFC Determination:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

As indicated above, the Court does not believe that Dr. Sutterfield's Physical RFC assessment should have been given substantial weight, for the reasons given earlier.  With respect to Plaintiff's hearing loss, the ALJ considered Plaintiff's hearing loss and accounted for such in his RFC finding: "She must avoid concentrated exposure to loud noise and cannot do work which requires excellent hearing, but she is able to avoid hazards in the workplace."  (Tr. 17).  In addition, Plaintiff suffered from hearing loss since birth, and had managed to graduate high school and had worked in the past.

As to Plaintiff's headaches, she indicated at the hearing that she used to take a stronger

-11-

medicine "a long time ago" but that it bothered her stomach, so that as of the time of the hearing, she was taking Amitriptyline and Extra Strength Tylenol. (Tr. 33).  As indicated earlier, Plaintiff has not sought regular treatment for her headaches.  Furthermore, Plaintiff testified that she stopped working on March 26, 2010, because she was laid off of work.  (Tr. 40).  She immediately began drawing unemployment benefits and was still drawing them at the time of the hearing. (Tr. 40).  As urged by Defendant, "[a]pplying for unemployment benefits 'may be some evidence, thought not conclusive, to negate' a claim of disability."  See Johnson v. Chater, 108 F.3d 178, 180-181 (8th Cir. 1997)(citation omitted).

With respect to Plaintiff's leg pain, the Court believes the total evidence of record supports the ALJ's findings.  Plaintiff did not allege leg pain in the application, and the medical evidence does not support a finding that Plaintiff's leg pain was disabling.  Furthermore, Plaintiff's daily activities do not support a finding of disability based on leg pain.

The Court believes there is substantial evidence to support the ALJ's RFC finding.

### D.    Hypothetical Question to VE:

The ALJ proposed the following hypothetical question to the VE:

> I'd like you to assume a younger individual with a high school education, this person can occasionally lift and carry 20 pounds, frequently 10 pounds, can sit for 6 hours in a day, stand, walk for 6 hours in a day.  Can frequently climb, balance, crawl, kneel, stoop, crouch, must avoid concentrated exposure to loud noises, cannot do work requiring excellent hearing, but can hear well enough to avoid normal hazards in the workplace.  And this person cannot return to any past relevant work and there are no transferrable skills.  Any [sic] question is would there be work in the economy this person could do?  And in answering the question, if any of your responses conflict with the DOT, I'd like you to explain that.

(Tr. 42).  In response, the VE stated that there were some light unskilled jobs that would be

AO72A
(Rev. 8/82)

available - cashiers, toll collector, ticket seller, and cashier II.  (Tr. 42).

The Court believes the hypothetical question the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  The Court further believes that the VE's response to the hypothetical question constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing light work with certain limitations as cashiers, toll collector, ticket seller, and cashier II.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

## V.      Conclusion:

The Court finds there is substantial evidence to support the ALJ's decision and accordingly, hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

DATED this 14th day of December, 2012.


/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-